UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-81275-CIV-SINGHAL

KEVIN HARRELL,

    Plaintiff,

v.

CITY OF WEST PALM BEACH,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant City of West Palm Beach's ("Defendant" or "the City") Memorandum of Law in Support of its Motion for Final Summary Judgment ("Motion for Summary Judgment") (DE [83]). In its motion, the City seeks summary judgment and dismissal of Plaintiff Kevin Harrell's ("Plaintiff" or "Harrell") Second Amended Complaint. Because Harrell plainly fails to show that a genuine dispute of material fact exists, the City's Motion for Summary Judgment is granted.

**I.**  **BACKGROUND**

Kevin Harrell, a black male, was formerly employed as a police officer for the City. He was hired in 2003, and his duties included enforcing laws and ordinances, preventing crime, and protecting property. Over the course of his employment as a police officer, Harrell received numerous complaints, was disciplined over thirty times, and accumulated over 100 suspension hours. The undisputed record shows that Harrell was far from a consummate police officer.

Harrell was eventually fired in 2021 by the Chief of Police, Frank Adderley ("Chief Adderley"), who is also a black male. Chief Adderley was the sole decision-maker responsible for terminating Harrell. In deciding to fire Harrell, Chief Adderley considered

an internal affairs ("IA") investigation into Harrell's alleged involvement with a convicted felon, Richard Althouse,[1] that revealed he engaged in six official acts of misconduct, including lying during the investigation. And, of course, Chief Adderley considered the numerous complaints about Harrell and the discipline that Harrell received while employed as a police officer for the City. Harrell's union did not dispute his termination.

After he was fired, Harrell filed suit against the City. He claims that throughout his employment as a police officer for the City, he was subjected to racial harassment. He claims that the continued harassment, including, but not limited to, being called "Midnight" by his supervisors and colleagues created a hostile work environment in violation of Title VII. He further claims that he was impermissibly retaliated against for complaining about the harassment; he claims that following his receipt of a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC") and his presentation of it to the City, he was terminated. Finally, Harrell complained that the City violated his Fourth Amendment rights after he turned over his phone during the internal affairs investigation.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[2] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). A factual dispute is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298

---

[1] At this time, Althouse had been under surveillance for nearly a year, as part of the City's criminal investigation into a drug trafficking organization.
[2] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

2

(11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

The moving party bears the initial burden of showing, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden can be discharged either by showing an absence of evidence to support an essential element of the nonmoving party's case or by showing the nonmoving party will be unable to prove their case at trial. *Celotex*, 477 U.S. at 325; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must consider the facts in the light most favorable to the nonmoving party. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). The party "opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.   ANALYSIS

The City seeks summary judgment on all three counts of Harrell's Second Amended Complaint (DE [66]). In pursuit of that endeavor, it submitted a properly supported motion for summary judgment with facts relevant to each of its claims. In response to that motion, Harrell utterly failed to rebut the City's arguments. The Court will therefore consider the City's statement of facts as undisputed and its arguments as unopposed. Accordingly, under Fed. R. Civ P. 56, the City is entitled to summary judgment.

### a. Harrell's Failure To Respond To The City's Motion.

Before explaining how the City demonstrated it is entitled to summary judgment, it is first necessary to outline Harrell's failure to substantively respond to the City's Motion for Summary Judgment and how that failure implicates the decision on the City's motion. To be sure, Harrell ostensibly filed a Response to the City's Motion for Summary Judgment at (DE [96]) and a Statement of Disputed Facts at (DE [93]). But those documents are misnomers and do not do what their titles claim. As outlined below, Harrell's Response does not respond to the City's summary judgment arguments and his Statement of Disputed Facts does not dispute the City's Statement of Material Facts.

#### i. Harrell Does Not Dispute The City's Statement Of Material Facts.

As mentioned above, the moving party bears the initial burden of showing, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp.*, 357 F.3d at 1259–60. Once it does so, the burden flips to the non-moving party to, using citations to specific parts of the record, show the presence of a genuine dispute. Fed. R. Civ. P. 56(c). If the non-moving party fails to meet his burden, the Court may consider any of the moving party's facts as *undisputed* and grant summary judgment in its favor. Fed. R. Civ. P. 56(e).

Further, under Local Rule 56.1(b),[3] "[a]ll material facts set forth in the movant's statement filed and supported as required [under 56.1(a)] will be deemed admitted unless controverted by the opposition party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *See Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1242 (S.D. Fla. 2009). The Local Rule 56.1

---

[3] The Local Rules have "the force of law." *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1158 (S.D. Fla. 2015) (citing *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010)).

"*preserves scarce judicial resources* by preventing the Court from having to scour the record and perform time-intensive fact searching" and "serves a vital purpose in help[ing] the court identify and organize the issues in the case." *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1158 (S.D. Fla. 2015) (internal citations omitted) (emphasis added).

Here, Harrell does not dispute most of the City's Statement of Disputed Facts, and the ones he does "dispute" are not true disputes. To begin, Harrell plainly admits paragraphs 1-3, 6-9, 11-13, 16, 18-22, 24-27, 29-35, and 38-54 of the City's Statement of Facts. *See* (DE [93]) (beginning each response with "undisputed"). Though Harrell often provides additional commentary after the word "undisputed," the additional commentary either provides irrelevant facts or it contains legal arguments regarding its admissibility in trial. *See, e.g.*, (DE [93] ¶ 8). Instead of wasting judicial resources trying to decode whether Harrell is actually trying to dispute these portions of the City's statement of facts with the additional commentary, the Court will instead simply rely on the plain meaning of the word "undisputed." Harrell therefore does not dispute paragraphs 1-3, 6-9, 11-13, 16, 18-22, 24-27, 29-35, and 38-54 of the City's Statement of Facts

As to the rest of the material facts that Harrell purports to "dispute" (paragraphs 4-5, 10, 14-15, 17, 23, 28, and 36-37), the commentary supporting each dispute does not actually create a genuine dispute of fact. Some of the commentaries are legal arguments that do not belong in a statement of disputed facts. *See, e.g.*, (DE [93] ¶¶ 5, 14). Others do not actually dispute the City's facts. *See, e.g.*, (DE [93] ¶¶ 4, 14, 15, 17, 23). By using the word disputed, Harrell signals his disagreement, but he does not point to record evidence to support the existence of any genuine dispute. Thus, Harrell does not actually

dispute the remaining paragraphs of the City's Statement of Facts.  This leaves none of the City's Statement of Facts as disputed; the City's facts are therefore deemed uncontested for the purposes of the Motion for Summary Judgment.

### ii.  Harrell's Response does not contain any Legal Arguments.

"When a party fails to respond to a Motion for Summary Judgment and Statement of Undisputed Facts, Fed. R. Civ. P. 56(e) provides that the court may 'grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304-CV, 2024 WL 999453, at *2 (S.D. Fla. Mar. 5, 2024) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 631 (11th Cir. 1988)). "An uncontested motion for summary judgment therefore can be granted not by default but if the motion is well supported by the uncontested facts and with proper application of the local rules."  *Dunlap*, 858 F.2d at 631 (11th Cir. 1988).  "Mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ojeda v. Louisville Ladder Inc.*, 410 F. App'x 213, 214 (11th Cir. 2010) (citing *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).

Harrell's Response does not contain any true arguments in response to the City's motion.  After it begins with a three-page introductory section that merely summarizes the allegations in Harrell's Second Amended Complaint and the City's summary judgment arguments, Harrell includes thirteen pages of "Governing Legal Principles" that do not apply the law to the facts of this case.  *See* (DE [96] at 4-17).  Only after sixteen-and-a-half pages of this throat-clearing does Harrell spend a mere two-and-a-half pages on an "Application of the law to Facts of This Case" section where he makes *just* two points.  Neither of these points, however, cite to a single fact from either parties' statement of

facts or to any record evidence. In other words, Harrell's Response, though purporting to respond to the City's Motion for Summary Judgment, does not actually include legally sufficient responses to the City's arguments. As such, the Court can treat the City's Motion for Summary Judgment as uncontested. Thus, if it is well supported by the uncontested facts, the Court can grant the motion. *See Dunlap*, 858 F.2d at 631 (11th Cir. 1988).

### b. The City is Entitled to Summary Judgment.[4]

#### i. Count I: Title VII – Hostile Work Environment

Title VII prohibits race-based discrimination that alters the terms and conditions of employment. *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1300 (11th Cir. 2007) (citing 42 U.S.C. § 2000e–2(a)(1)). The terms and condition of employment can be altered in two different ways: through a tangible employment action and through the creation of a hostile work environment. *See id.*

A viable hostile work environment claim must include allegations of harassment that is "sufficiently severe or pervasive to alter the terms and conditions of work." *See id.* To establish such a claim, the plaintiff must show:

> (1) that he . . . belongs to a protected group; (2) that the employee has been subject to unwelcome . . . harassment . . . ; (3) that the harassment must have been based on the . . . employee['s race]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

In addition to establishing those five elements, an employee must timely file his charge of discrimination with the EEOC within 300 days of the discriminatory act.

---

[4] The City has set forth numerous ways in which it is entitled to summary judgment as to each count of the Amended Complaint. Though each argument is properly supported, the Court will not address each one.

7

*Maynard v. Pneumatic Prod. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). If the employee fails to do so, he is unable to bring a Title VII lawsuit against his employer. *See Love v. Pullman Co.,* 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964 . . . may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief.")

With respect to hostile work environment claims, since they comprise a series of separate acts that constitute one unlawful employment practice, so long as one act contributing to the claim occurs within the 300-day window, every related act, even those occurring outside the 300-day window, is considered as part of the unlawful employment practice. *See Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). For an act outside the 300-day window to be considered a related act, it must "involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Jones v. Allstate Ins. Co.*, 707 F. App'x. 641, 647 (11th Cir. 2017) (citations omitted).

Here, the City claims that Harrell's hostile work environment claim fails because it was not timely and because he cannot show that the harassment was sufficiently severe or pervasive. Because Harrell did not provide legally sufficient responses to these arguments and because the City properly supported each one, the Court grants summary judgment in the City's favor as to Count I.

The City begins by explaining that Harrell's hostile work environment claim is untimely. Based on when Harrell filed his charge of discrimination with the EEOC, there are four timely acts (i.e., those that occurred within the 300-day window) that could serve

8

as the basis for his race discrimination claim. But as the City explains in its Motion for Summary Judgment, none of those four acts relate to race harassment. (DE [83] at 5). Since Harrell does not dispute this, there is no record evidence of race harassment occurring within the 300-day window. As a matter of law, then, Harrell cannot show that he was subject to unwelcome racial harassment. *See Mendoza*, 195 F.3d at 1245.

Even if Harrell could get past this timeliness issue and the Court could consider evidence of race discrimination occurring outside the 300-day window, Harrell still cannot show that the racial harassment was severe or pervasive. "[T]he sporadic use of abusive language, [race]-related jokes, and occasional teasing[,]" does not violate the law. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Racial slurs spoken by co-workers ha[ve] to be so 'commonplace, overt and denigrating that they create[ ] an atmosphere charged with racial hostility.'" *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir.1995) (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir.1990)); *see also Barrow v. Ga. Pac. Corp.*, 144 F. App'x. 54, 57- 58 (11th Cir. 2005) (affirming summary judgment for employer where African American plaintiff was, among other things, subjected to racial slurs by his superiors, including being called the n-word and being told that that they were going to beat plaintiff's "black ass").[5]

Here, the alleged conduct is not severe or pervasive. The record shows that Harrell was only sporadically subjected to potentially offensive name-calling, including being called "Midnight," "Charcoal," "Darkness," "Black Jesus," and "Malcolm X of the Police Department." Harrell has even conceded that he perceived some of these to be jokes. (DE [83] at 8). This evidence is insufficient to show that the racial slurs were so commonplace, overt and denigrating that they created an atmosphere charged with racial

---

[5] Each case is different. This Court is bound by the law of the Circuit and sometimes quotations appear offensive even though they are not illegal. This is such an example.

9

hostility. *Edwards,* 49 F.3d at 1521. Accordingly, the record does contain evidence of racial harassment sufficient to show that Harrell was subject to severe and pervasive racial harassment. For this independent reason, summary judgment is granted in favor of the City as to Count I.

### ii. Count II: Title VII – Discrimination

Title VII also prohibits an employer from discriminating against an employee on the basis of that employee's race. Plaintiffs seeking to bring discrimination claims can do so in one of three ways: 1) by presenting direct evidence of discriminatory intent; (2) by satisfying the burden–shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by producing a "convincing mosaic" of circumstantial evidence warranting an inference of intentional discrimination. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 & n.6 (11th Cir. 2019) (en banc) (citation omitted). Since employers generally do not blatantly discriminate against their employees, employees frequently turn to the *McDonnell Douglas* framework or attempt to produce a convincing mosaic of circumstantial evidence of discrimination to support intentional discrimination claims.

### 1. *McDonnell Douglas*

Under the *McDonnell Douglas* framework, a plaintiff must first show that: (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified to perform the job in question, and (4) his employer treated "similarly situated" employees outside his class more favorably. *McDonnell Douglas*, 411 U.S. at 802. "Once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer . . . to introduce evidence of some legitimate, nondiscriminatory reason for its employment decision." *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 931 (11th Cir. 2017) (citations and internal quotations

omitted).  "Should the employer make such a showing, the plaintiff must then show that the seemingly legitimate reason the employer gave was pretextual, i.e., the proffered reason was not the true reason for the employment decision." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013).

Here, the City argues that Harrell's claims fail because there are legitimate, nondiscriminatory reasons for firing Harrell, of which there is no evidence of pretext.  The undisputed record shows that the City had such reasons.  The following is a timeline of events that ultimately led to the City's decision to terminate Harrell from the police force.

In August 2020, after receiving numerous complaints about Harrell, Chief Adderley ordered him to undergo a fitness-for-duty evaluation. (DE [84] ¶ 20).  After the evaluation revealed that Harrell was unfit for duty, Chief Adderley ordered him to attend mandatory counseling (which Harrell also attended in 2013), light duty for 90 days, and then administrative leave pending his fitness for duty re-evaluation. (DE [84] ¶ 21). After his fitness for duty re-evaluation, Harrell was found to be fit for duty limited to a non-patrol assignment that did not require collaboration with other police officers; Chief Adderley therefore assigned Harrell to City Hall. (DE [84] ¶ 22).  Harrell was then assigned to the Police Department lobby after a black employee filed a sexual harassment complaint against Harrell, and because another black supervisor found he was causing disruptions. (DE [84] ¶ 23).

Chief Adderley placed Plaintiff on administrative leave for a second time after an IA investigation stemming from Harrell's numerous communications with Richard Althouse. (DE [84] ¶¶ 24-25). Chief Adderley eventually terminated Harrell after an IA investigation revealed Plaintiff engaged in misconduct. (DE [84] ¶¶ 25-26).  The

11

investigation revealed evidence of Harrell's wrongdoing, including his admitted association with Althouse.  (DE [84] ¶¶ 25-26).

The undisputed record also reflects that the sole decision-maker with respect to Harrell's termination, Chief Adderley, independently reviewed the IA investigation and, after meeting with Harrell and his attorney, determined that Harrell failed to provide a justifiable reason for his actions, warranting his immediate termination. (DE [84] ¶¶ 26).

The aforementioned timeline of events demonstrates that the City had legitimate, non-discriminatory reasons for firing Harrell.  *See, e.g., Edwards v. Niles Sales & Serv., Inc.*, 439 F. Supp. 2d 1202, 1230 (S.D. Fla. 2006) (Moore, J.).  The only way this case can go to a jury is if Harrell can show that these legitimate, non-discriminatory reasons for firing were pretextual.[6]  But since, as explained above, Harrell's response does not present this argument—let alone any arguments—he has failed to satisfy his burden.

### iii.  Count II: Title VII – Retaliation

Title VII also prohibits an employer from retaliating against an employee if that employee has "opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e3(a).  To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse action.  *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).

---

[6] He could also produce a "convincing mosaic" of circumstantial evidence warranting an inference of intentional discrimination. *Lewis*, 918 F.3d at 1220 & n.6.  But as explained numerous times, Harrell has failed to present any legally sufficient arguments in response to the City's Motion for Summary Judgment.

To show causation, Plaintiff must show that: (1) the decision-maker was aware of his protected conduct; and (2) the protected conduct and the adverse employment action were not wholly unrelated. *Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). Plaintiff may show causation by demonstrating that the decision-maker became aware of the protected activity and that there was close temporal proximity between when the decision-maker learned of the protected activity and the subsequent adverse employment action. *Id.* Importantly, the Court "must focus on the actual knowledge and actions of the decision-maker[,]" and no one else. *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002). A "decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. Bellsouth Tel. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, when Chief Adderley terminated Harrell he was not aware that the City had received Harrell's notice of right to sue. (DE [84] ¶ 28). Additionally, Chief Adderley was not aware that Plaintiff had ever complained about discrimination, harassment, or retaliation on any basis, let alone on the basis of his race. (DE [84] ¶ 28). Thus, Chief Adderley could not have been motivated to retaliate against Harrell for these actions since they were unknown to him when he fired Harrell. *See Brungart*, 231 F.3d at 799. There is therefore no causal connection between Harrell's protected activity and the decision to terminate him.

Even if Chief Adderley was somehow aware that Harrell had complained about being discriminated against and receiving a notice of right to sue letter, Harrell's intervening misconduct breaks any causal chain between Harrell's complaints and Chief Adderley's decision to terminate Harrell. *See, e.g.*, *Brisk v. Shoreline Foundation, Inc.*, 654 F. App'x. 415, 417 (11th Cir. 2016) (affirming summary judgment in favor of the

13

employer when employee's poor work performance was an intervening cause between the employee's protected conduct and termination). Following Harrell's receipt of the notice of right to sue, he was observed meeting with Althouse; the subsequent IA investigation revealing six official acts of misconduct related to those meetings with Althouse. (DE [84] ¶¶ 24-25). Thus, Harrell's intervening misconduct breaks any causal chain that could have existed between his protected conduct and the City's decision to terminate him. *See, e.g.*, *Brisk*, 654 F. App'x. at 417.[7] The City is therefore entitled to summary judgment on Harrell's Title VII retaliation claim.

### iv.  Count III: Harrell's § 1983 claim fails.

"[A] municipality can be found liable under §1983 only where the municipality itself causes the constitutional violation at issue." *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022); *see Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978). To state a claim under §1983 against a municipality, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality "had a custom or policy that constituted deliberate indifference to that constitutional right"; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Here, Harrell has failed to establish that his constitutional rights were violated pursuant to a City custom or policy. Harrell has not presented any evidence that the City has a custom or policy of obtaining search warrants for its police officers' phones. As such, there is no basis to hold the City liable. The City is entitled to summary judgment as to Harrell's § 1983 claim. Accordingly, it is hereby

---

[7] If the above is still not enough to show that the City did not retaliate against Harrell, for the reasons why Harrell's Title VII discrimination claim fails, Harrell's Title VII retaliation claim also fails because the City has proffered legitimate, nondiscriminatory reasons for terminating Harrell.

**ORDERED AND ADJUDGED** that the City's Motion for Summary Judgment is **GRANTED**. In accordance with Federal Rule of Civil Procedure 58, judgment for Defendant City of West Palm Beach will be entered separately. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions. Furthermore, all deadlines are **TERMINATED**, and all hearings are **CANCELLED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of July 2024.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF